# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| NORMAN T.,<br><br>        *Plaintiff*<br><br>v.<br><br>NANCY A. BERRYHILL,<br>*Acting Commissioner of Social Security,*<br><br>        *Defendant* | No. 1:17-cv-00323-GZS |

## REPORT AND RECOMMENDED DECISION[1]

This Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the basis that the ALJ erred in two respects in determining his mental residual functional capacity ("RFC"): in assessing a limitation flowing from his cognitive disorder that is unsupported by any record evidence and in failing to assess any limitation in his ability to work with coworkers and supervisors. *See* Statement of Specific Errors ("Statement of Errors") (ECF No. 13) at 1-14. He argues that these errors undermined the ALJ's reliance on the testimony of a vocational expert predicated on the faulty mental RFC determination. *See id*. at 14. I agree that the ALJ erred in assessing the functional effects of the plaintiff's cognitive disorder and that this error warrants

---

[1] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

remand. Accordingly, I recommend that the court vacate the commissioner's decision and remand this case for further proceedings consistent herewith. I need not and do not reach the plaintiff's argument that the ALJ's omission of a limitation in working with coworkers and supervisors separately warrants remand.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff had the severe impairments of degenerative disc disease of the lumbar spine, affective disorder, anxiety disorder, attention-deficit disorder, and cognitive disorder status post remote traumatic brain injury, Finding 2, Record at 19; that he had the RFC to perform sedentary work as defined in CFR § 416.967(a) except that he could lift, carry, push, and pull up to 10 pounds occasionally, sit for six hours in an eight-hour workday, stand and walk for two hours in an eight-hour workday, and stand and walk for intervals of no more than 15 minutes, would need to stand or walk for five minutes, remaining on task, after 30 minutes of sitting, could never climb ladders, ropes, or scaffolds, could occasionally climb ramps or stairs, could occasionally crouch, crawl, kneel, and stoop, could never balance on uneven surfaces, needed to avoid exposure to extreme cold, vibration, moving mechanical parts, and unprotected heights, could frequently reach and handle with the right (dominant) upper extremity, was limited to simple work in a nonproduction-paced work setting (no assembly-line type work), could not work with the public as part of his job duties, was limited to simple decision making and no more than occasional changes in a routine work setting, and would be off-task for 10 percent of the workday in addition to normal breaks, Finding 4, *id*. at 22; that, considering his age (45years old, defined as a younger individual, on his amended alleged disability onset date, December 3, 2013), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs

existing in significant numbers in the national economy that he could perform, Findings 6-9, *id*. at 29; and that he, therefore, had not been disabled from December 3, 2013, through the date of the decision, June 1, 2016, Finding 10, *id*. at 30-31. The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. § 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The statement of errors also implicates Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. § 416.920(f); *Yuckert*, 482 U.S. at 146 n.5. At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. § 416.920(f); Social Security

Ruling 82-62 ("SSR 82-62"), reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 813.

## I. Discussion

### A. Relevant Background

As the ALJ noted, the plaintiff filed the instant application for SSI benefits shortly after the Appeals Council denied his request for review of a prior unfavorable ALJ decision issued on July 27, 2012. *See* Record at 25. In the 2012 decision, a different ALJ had found that the plaintiff had the severe impairments of lumbar degenerative disc disease and depression and that he was limited, in relevant part, to work involving simple, routine, repetitive tasks. *See* Findings 3, 5, *id.* at 81-82.

The ALJ stated, "Considering the passage of over a year between the issuance of this decision and the application for disability currently under review, I afford [the 2012 decision] limited weight." *Id.* at 25. He explained:

> The limitations of that [RFC] are still supported, and the review of more recent medical records demonstrates that the [plaintiff] continues to suffer from the impairments found in this decision. However, the [plaintiff]'s ability to sit for long periods of time has deteriorated and his mental impairments have been better documented, thus supporting additional limitations such as the need to take routine breaks while sitting and an allowance that he may be off task for up to 10% of the work day.

*Id.*

Indeed, following the issuance of the 2012 decision, the plaintiff underwent a neuropsychological evaluation by Christine R. Deering, Ph.D., on March 28, 2013, *see id.* at 328-35, and, in connection with the instant application, a psychological evaluation by agency examining consultant A.J. Butler, Ed.D., on April 16, 2014, *see id.* at 369-74. With the benefit of review of both of those reports, two agency nonexamining consultants, Peter G. Allen, Ph.D., and

Brian Stahl, Ph.D, formulated opinions concerning the nature and impact of the plaintiff's mental impairments. *See id.* at 105-13, 124-31.

### 1. Deering Evaluation

The plaintiff's primary care physician, Charles T. McHugh, M.D., referred him to Dr. Deering "for a comprehensive neuropsychological evaluation to assess the current level of his cognitive and neurobehavioral functioning secondary to declining short-term memory, problems with vision, personality changes, and distractibility exacerbated over the past 6-8 months." *Id.* at 328; Statement of Errors at 9. Dr. Deering noted that the plaintiff's history included "severe head trauma with loss of consciousness secondary to a motorcycle accident at age 18 which required a 3 month hospitalization." Record at 328. She concluded that he had a cognitive disorder not otherwise specified, an attention-deficit hyperactivity disorder, and a mood disorder not otherwise specified. *See id.* at 334.

Dr. Deering noted that "[t]here was evidence of mild degrees of distractibility/inattention and impulsivity/restlessness despite the quiet testing environment" and that:

> Neuropsychological deficits were observed in the areas of attention/concentration, executive functioning, memory functions, and motor functions on his right side. Performance on tasks of attention/concentration indicated problems with immediate auditory attention, divided attention, processing speed, and sustained attention. Executive functioning, often correlated with poor attentional capacity, evidenced mild levels of mental concreteness, inability to quickly and easily benefit from verbal feedback, and mild response inhibition. Memory functions were lower than expected on delayed memory for prose, rote memory, and delayed memory for designs.

*Id*.

In a section of her report titled "Treatment Recommendations," Dr. Deering stated, "As [the plaintiff] evidences significant neuropsychological deficits in the areas of attention/concentration, executive functions, memory functions (as well as significant mood

5

dysregulation with depression) he is not deemed capable of participating in gainful employment either presently or in the next 12 months." *Id.* at 335.

### 2. Butler Evaluation

On examination of the plaintiff on April 16, 2014, Dr. Butler noted "observable attention and concentration difficulties which likely impact negatively upon his short-term memory functioning." *Id*. at 373. She added: "His short-term verbal memory functioning is estimated as being within the Extremely Low to Borderline range." *Id*. She diagnosed the plaintiff with a mood disorder not otherwise specified, a cognitive disorder not otherwise specified following a traumatic brain injury at the age of 18, and generalized anxiety disorder, indicating, in relevant part, that he was "likely to have significant problems sustaining prolonged task focus." *Id.*

### 3. Allen and Stahl Opinions

With the benefit of review of the Deering and Butler reports, Dr. Allen concluded on May 2, 2014, that the plaintiff's cognitive disorder was nonsevere, *see id*. at 107-08, and that, although he had variable concentration, he was "able to manage routine tasks for [a] normal workday/week, within his physical limits[,]" *id*. at 112. On reconsideration on September 12, 2014, Dr. Stahl found the plaintiff's cognitive disorder severe. *See id*. at 131. However, he deemed him "able to understand and remember simple instructions and tasks" and "able to work in 2 hour blocks performing simple tasks over the course of a normal workday/workweek." *Id*. at 130.

### 4. ALJ's Assessment of the Evidence

The ALJ stated, in relevant part:

Dr. Deering's evaluation supports the [plaintiff]'s allegation of difficulty paying attention with her findings of neuropsychological deficits in the areas of attention and concentration, executive functioning, and memory functions that could reasonably be expected to limit his concentration, persistence, and pace. I therefore find it appropriate to limit the [plaintiff] to simple decision making, and no more than occasional changes in [a] routine work setting; a non-production paced work

6

> setting. I also find that he will be off-task for no more than 10% of the workday, in addition to normal breaks. Although his allegations of difficulty paying attention have been corroborated by his one-time evaluations by Drs. Deering and Butler, his attention span was noted to be normal in subsequent medical visits and he has not reported any associated limitations in his daily life.

*Id.* at 27 (citation omitted). As the plaintiff notes, *see* Statement of Errors at 6-7, the records of "subsequent medical visits" to which the ALJ referred are the notes of Andrea Palencar, M.D., who treated him in early 2015 for back and knee pain, *see* Record at 27, 405-08, 410-14. In records of February 4, 2015, and April 15, 2015, visits, Dr. Palencar noted under the heading "Psych": "alert and cooperative; normal mood and affect; normal attention span and concentration." *Id.* at 407, 413.

The ALJ afforded little weight to Dr. Deering's opinion that the plaintiff's cognitive difficulties would prevent him from working, noting that the issue is one reserved to the commissioner. *See id.* at 28. However, he stated that "the findings in Dr. Deering's report, which are consistent with the medical records as a whole and the [plaintiff]'s subjective complaints, are also consistent with the above-outlined [RFC], which . . . does not preclude the performance of all gainful employment." *Id*.

The ALJ summarized Dr. Butler's findings as follows:

> Dr. Butler opined that the [plaintiff] would [be] able to understand tasks consistent with average ability, but would have difficulty with abstract reasoning requiring enhanced verbal mediation, would need multiple repetition and reinforcement of verbal information in order to acquire, retain and recall it, and would likely have significant problems sustaining prolonged task focus. She felt he would be able to interact adequately in a familiar setting, but his mood lability, social withdrawal, and avoidance behaviors are apt to negatively impact on interactions in large or social settings. She felt he would likely have difficulty with adaptation for the same reasons.

*Id.*

The ALJ stated that he gave the Butler opinion "some weight[,]" explaining:

> Although she saw the [plaintiff] for only a single examination, she is an acceptable medical source familiar with the disability program and she personally evaluated the [plaintiff]. Furthermore, her diagnoses were based on examination findings reflective of more than minimal impact on sustained functioning, consistent with the [plaintiff's] statements regarding his level of functioning and the objective medical evidence of record. The limitations in her opinion have been accounted for in the [RFC], limiting the [plaintiff] to unskilled work with the opportunity to refocus in addition to normal breaks, and limiting work-related social interaction.

*Id.*

The ALJ gave "some weight" to the Allen and Stahl opinions but concluded that, insofar as they pertained to the plaintiff's cognitive limitations, they were not sufficiently restrictive. *See id.* at 28-29. He deemed Dr. Allen's "characterization of the [plaintiff]'s cognitive disorder as non-severe . . . not supported given the findings of Dr. Butler's consultative examination finding." *Id*. at 28. He stated that "Dr. Stahl limited the [plaintiff] to working in two hour blocks, with no allowance for time off task or opportunity to refocus in addition to normal breaks, which is inconsistent with the medical evidence and therefore precludes [giving] greater weight [to his opinion]." *Id.* at 29.

### B. Analysis

As the plaintiff argues, and counsel for the commissioner conceded at oral argument, "[t]here is no evidence in the record to support the ALJ's determination that the plaintiff's cognitive disorder would be limited to being off task no more than 10% of the workday in addition to normal breaks." Statement of Errors at 5. No such finding is contained in, or can reasonably be inferred from, either the Deering or Butler report. *See* Record at 328-35, 369-74. To the contrary, Dr. Deering deemed the plaintiff incapable of working. *See id*. at 335.

Nor do the Allen and Stahl opinions support such a finding. Indeed, the ALJ expressly discounted the weight afforded to those opinions because Dr. Allen deemed the plaintiff's

cognitive disorder nonsevere and Dr. Stahl failed to account for time off-task in periods other than normal breaks. *See id*. at 28-29.

An ALJ may not determine a claimant's RFC based on his or her lay interpretation of the raw medical evidence unless a common-sense judgment about functional capacity can be made. *See, e.g., Eshelman v. Astrue*, No. 06-107-B-W, 2007 WL 2021909, at *3 (D. Me. July 11, 2007) (rec. dec., *aff'd* July 31, 2007) ("While the First Circuit does permit an [ALJ] to pick and choose among physicians' findings and opinions, it does not permit the crafting of an RFC based on raw medical evidence of record unless common-sense judgments about functional capacity can be made.") (citations, internal quotation marks, and footnote omitted).

In her brief, and through counsel at oral argument, the commissioner contends that the ALJ made just such a common-sense judgment based on a careful assessment of the totality of the record evidence. *See* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 15) at [2]-[5]. She argues that the off-task limitation was supported by Dr. Palencar's notation on two occasions that the plaintiff had a normal attention span and concentration and by evidence that, although the plaintiff was sometimes forgetful, any impact on his activities of daily living, such as cooking, shopping, driving, and attending to his personal grooming, was minimal. *See id*. at [3]-[4].

Yet, the ALJ did not explain, nor is it otherwise apparent, how he concluded that the plaintiff would be off-task 10 percent of the time *versus* 15 percent, or some other number. *See* Record at 21-29. Dr. Palencar's observations do not support such a limitation: contrary to the findings of Drs. Deering and Butler, and of the ALJ himself, she noted no cognitive limitations. Nor could the ALJ make a common-sense judgment that the plaintiff would be off-task 10 percent of the time *versus* 15 percent based on the plaintiff's ability to perform certain activities of daily

9

living. As the plaintiff argues, *see* Statement of Errors at 11-12, this case is analogous to *Bernier v. Colvin*, No. 1:14-cv-29-JHR, 2015 WL 46062 (D. Me. Jan. 2, 2015), in which this court held that an ALJ had "overstepped the boundaries of his competence as a layperson in delineating the [claimant]'s capabilities in the area of concentration, persistence, and pace" when, "[e]ven granting that the [claimant]'s ability to read, watch television, learn Japanese, and work on an electronics project suggest[ed] some capacity to concentrate and persist, it d[id] not suggest, as a matter of commonsense judgment, that he retained the ability on a full-time basis to handle routine tasks/semiskilled work, occasional decision-making, and occasional workplace changes[,]" *Bernier*, 2015 WL 46062, at *4 (footnote omitted).[2]

The ALJ, hence, erred in assessing a mental limitation unsupported by any evidence of record.

The commissioner argues in the alternative that any error is harmless, the plaintiff having failed to point to evidence that he would have been off-task more than 10 percent of the time. *See* Opposition at [7]-[8]. However, as the plaintiff observes, *see* Statement of Errors at 10, the ALJ's colloquy with the vocational expert present at his hearing makes clear that accurate assessment of the percentage by which the plaintiff was off-task – specifically, whether he was off-task more than 10 percent of the time – was material to whether he was disabled:

> Q: [If, in addition to the hypothetical restrictions posed in earlier questions, the plaintiff was] off task 20 percent of the workday in addition to normal breaks, that would include over the course of a day every hour this individual would be expected

---

[2] The commissioner seeks to distinguish *Bernier* on the bases that in this case, unlike in *Bernier*, the ALJ (i) made a common-sense determination that, in addition to being off-task, the plaintiff would be restricted to simple, nonproduction-paced work and (ii) provided a more fulsome explanation of his reasoning. *See* Opposition at [5]-[6]. On the first point, she asserts that this court has repeatedly upheld limitations to simple, routine, and/or repetitive work when a claimant has been deemed moderately limited in concentration, persistence, or pace. *See id*. However, the ALJ's off-task limitation, rather than his simple-work limitation, is at issue here. Her second point is no more persuasive. Even if the ALJ in this case provided a better overall explanation of his findings, he did not explain why he found that the plaintiff would be off task 10 percent of the time *versus* some greater percentage.

10

to be off task 12 minutes consistently every hour in addition to normal breaks . . . would [that restriction] preclude work . . . .?

A: Yes. That's correct.

* * *

A: In terms of off task behaviors, I've found that employers are tolerant of 10 to 15 percent of time being off task. For these more simple jobs, the majority of employers are more tolerant of the lower end of that range of off task behavior. . . .

Q: Okay. So the 15 percent on the higher range of the unskilled work, and the lesser skilled within that, you'd say it would be what? You said percentage-wise.

A: The range is 10 to 15 percent for unskilled, but my experience is that the majority of employers are more tolerant at the lower end of that.

Q: All right. So 10 percent, would still be some issues, but you're saying it would be increasingly bad, and then when you get to 15 percent, you would say, in general, that would not be tolerated.

A: Correct. If that occurred consistently, correct.

Record at 66-67.

Because the ALJ relied on vocational expert testimony concerning a percentage of time during which the plaintiff would be off-task time that is unsupported by substantial evidence, his reliance on the vocational expert's testimony to carry the commissioner's burden at Step 5 was misplaced. *See, e.g., Arocho v. Sec'y of Health & Human Servs.,* 670 F.2d 374, 375 (1st Cir. 1982) (responses of a vocational expert are relevant only to the extent offered in response to hypothetical questions that correspond to the medical evidence of record).

Nor is this case where the ALJ's error is harmless because "the ALJ's finding is more favorable to the [claimant] than the evidence of record would otherwise support – typically, evidence in the form of agency nonexamining consultants' opinions." *Vallier v. Berryhill*, No. 1:17-cv-00064-DBH, 2017 WL 5665539, at *4 (D. Me. Nov. 26, 2017) (rec. dec., *aff'd* Dec. 12, 2017). While the ALJ's RFC finding regarding the plaintiff's off-task limitations is indeed more favorable than those of the agency nonexamining consultants in this case, Drs. Allen and Stahl,

11

the ALJ rejected their conclusions regarding the impact of the plaintiff's cognitive limitations. *See* Record at 28-29.

In the so-called "*Lisa Staples*" case, *Staples v. Berryhill*, No. 1:16-cv-00091-GZS, 2017 WL 1011426 (D. Me. Mar. 15, 2017) (rec. dec., *aff'd* Mar. 30, 2017), this court rejected the commissioner's argument that the existence in the record of less claimant-friendly RFC opinions by agency nonexamining consultants rendered an ALJ's RFC error harmless, observing that the ALJ had rejected those opinions on the basis that later-submitted evidence demonstrated that the claimant had greater mental limitations than those the consultants had assessed. *Lisa Staples*, 2017 WL 1011426, at *5. The court noted that "[t]his was . . . effectively a concession that the [agency nonexamining consultants'] opinions could not stand as substantial evidence of [the claimant's] mental RFC." *Id*. (citations omitted). "Thus, instead of assessing a mental RFC that gave the [claimant] 'the benefit of the doubt' or otherwise was more favorable than the remaining evidence would support, the [ALJ] . . . assessed an RFC unsupported by substantial evidence." *Id.* (citation omitted).

The same is true here. Because the ALJ erred in assessing an off-task limitation unsupported by any evidence of record, and that error undermined his finding at Step 5 that the plaintiff was capable of performing work existing in significant numbers in the national economy, remand is warranted.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **VACATED** and the case **REMANDED** for proceedings consistent herewith.

## *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the district court is sought, together with a supporting memorandum,*

*within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de</u> <u>novo</u> review by the district court and to appeal the district court's order.*

Dated this 24th day of June, 2018.

<u>/s/ John H. Rich III</u>
John H. Rich III
United States Magistrate Judge